## ROBINSON *v.* IRON RAILWAY CO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

No. 324. Submitted May 1, 1890. — Decided May 19, 1890.

A bill in equity was filed by the holder of second mortgage bonds of a railroad company, to rescind the sale of the road, made under a decree of foreclosure, to a committee of the first mortgage bondholders; or to have the sale declared to be in trust for both classes of bondholders, and for other relief. The bill was demurred to. No actual fraud was alleged. No offer was made to redeem. It was not averred that there was any consideration for an alleged agreement that the second mortgage bondholders should share in the purchase; or that the property was sold for less than its actual value. It appeared that the second mortgage bondholders had such notice of the foreclosure suit that they might have intervened in it. A trust company was the trustee under both mortgages, but no collusion by, or unfaithfulness of, the trustee was alleged. It did not appear that the second mortgage bondholders could have prevented the decree of foreclosure, and the suit was one to foreclose both mortgages. The members of the committee of the first mortgage bondholders, who were alleged to have made the agreement, were not made parties to this suit; *Held*, that the bill could not be sustained.

IN EQUITY. The case is stated in the opinion.

*Mr. George W. Morse* for appellant.

*Mr. John C. Coombs* and *Mr. Charles H. Hanson* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Southern District of Ohio, by William

Robinson, in behalf of himself and all the other holders of the second mortgage or income bonds of The Iron Railroad Company, who desire to come in and aid in the prosecution of the suit, and to contribute to the expenses thereof, against The Toledo, Cincinnati and St. Louis Railroad Company, the said Iron Railroad Company, The Iron Railway Company, (all three of them being corporations of Ohio,) The Central Trust Company of New York, a New York corporation, and John C. Coombs.

The substance of the material allegations of the bill is as follows:

On the 5th of August, 1881, The Iron Railroad Company executed to The Central Trust Company of New York, hereinafter called "the Trust Company," a first mortgage, covering its line of railroad and other property between the Ohio River, in Lawrence County, and the south line of Jackson County, Ohio, including sundry other lines in Lawrence County, to secure $500,000 of six per cent gold bonds. On the 1st of August, 1881, the company executed to the same Trust Company its second mortgage on the same railroad property and lines, to secure $500,000 of six per cent income bonds. This mortgage was made expressly subject to the other one. The interest to be paid on the income bonds was to be such amount, not exceeding six per cent per annum, as the company should annually declare to be the year's instalment of interest payable out of the net earnings of the lines of railroad of the company, interest not to be accumulative, and none to be considered due and payable except out of net earnings applicable to the purpose, and when the amount should have been ascertained and declared by the board of directors. The plaintiff is the holder and owner of twenty-five of such income bonds, of $1000 each. The interest on the first mortgage bonds was payable absolutely, semi-annually, on the first days of January and July, on the presentation of coupons annexed to the bonds.

Afterwards, The Iron Railroad Company was consolidated with The Toledo, Delphos and Burlington Railroad Company, an Ohio corporation, and the latter was afterwards consoli-

dated with The Toledo, Cincinnati and St. Louis Railroad Company, another Ohio corporation. In August, 1883, the latter corporation was put into the hands of a, receiver. The earnings of the road of The Iron Railroad Company were at all times sufficient to pay interest on the first mortgage bonds, and to pay a large interest on the second mortgage bonds. The holders of the second mortgage bonds had no voice in either of the consolidations, and the Trust Company never assented to them. Both consolidations were illegal, collusive, fraudulent and void. No dividend was ever declared payable to the holders of the second mortgage bonds, though it was fairly earned. So the holders of such bonds had no opportunity to enter for a breach of the conditions of the mortgage and to operate the road. The earnings of The Iron Railroad, which ought to have been applied to keep down the interest on its bonds, were largely diverted, in consequence of its consolidation with the other roads, and applied to pay their expenses: and the holders of the second mortgage bonds have an equitable lien on the property of the companies with which The Iron Railroad Company was consolidated, to have refunded the amount of such diverted earnings, and to have them applied to pay the interest on the two classes of bonds.

By the terms of the first mortgage, the Trust Company could have entered at any time after the failure to appropriate the earnings to pay the interest, and could have had the earnings of The Iron Railroad kept separate; and there would have been a surplus to be devoted to paying the interest on the second mortgage bonds. The Trust Company, being a trustee under both mortgages, was bound to execute its trust for the benefit of the holders of both classes of securities; but, by reason of the apparently inconsistent positions occupied by the trustee, the holders of the second mortgage bonds had no fair notice of the proceedings to foreclose and sell the property, and the trustee gave no notice to any of the holders of the second mortgage bonds, of such proceedings, and they were unrepresented therein and had no opportunity to present to the court the facts set forth in the bill.

In July, 1883, the Trust Company filed a bill in equity, in

the Circuit Court of the United States for the Southern District of Ohio, against The Toledo, Cincinnati and St. Louis Railroad Company, to foreclose the mortgages, and the defendant company appeared and submitted to a default and a decree of foreclosure.  A receiver and a special master were appointed, and the receiver was ordered to keep a separate account of the earnings of each division, which he proceeded to do, on November 1, 1883.  The special master found that the net earnings of The Iron Railroad for the five months from November 1, 1883, to April 1, 1884, were $33,716.37.  On the 15th of July, 1884, five persons, whose names are given, holders to a greater or less amount of the first mortgage bonds, became a committee of the first mortgage bondholders, under a contract whereby they were to purchase The Iron Railroad, with all its property, under the decree of sale.  All, or substantially all, of the first mortgage bondholders signed the contract with the committee; but the second mortgage bondholders had no notice thereof, and were not invited to participate in the appointment of the committee.  A copy of the agreement is annexed to the bill.  It contained a provision authorizing the committee to negotiate for a participation by the second mortgage bondholders in the benefits of the trust created by the agreement.  On the 10th of June, 1884, the holders of the second mortgage bonds were called together in Boston, and a committee of five of them, of whom the plaintiff was one, was appointed to confer with the committee of the first mortgage bondholders, in regard to a participation in the reorganization of the company, and to take such other steps as might be necessary to protect the interests of the second mortgage bondholders.  On the 19th of June, 1884, the two committees met, and it was agreed between them that the second mortgage bondholders should participate in the reorganization, and should rank therein substantially as they ranked previously, subject to a fair division of expenses, it being understood that a plan of reorganization should be submitted, and that the committee of the first mortgage bondholders should purchase the property at the sale.  The railroad and property were sold on the 28th of June, 1884, in

pursuance of the decree, and the defendant Coombs, acting for the committee of the first mortgage bondholders, purchased the same for $500,000, and, as the plaintiff assumed and had reason to believe, for the benefit of both classes of security holders. The sale was confirmed on the 18th of July, 1884, and on the 31st of July, 1884, the committee of the second mortgage bondholders submitted to the committee of the first mortgage bondholders a plan for reorganization; a copy of which is annexed to the bill with a copy of a letter from the committee of the second mortgage bondholders, accompanying it. Meantime, immediately after the sale, the committee of the first mortgage bondholders proceeded to organize, under the laws of Ohio, the defendant corporation The Iron Railway Company, with the intention of transferring the property to it when the sale should be confirmed. The Iron Railway Company is capitalized at $600,000, with the purpose of issuing its stock, dollar for dollar, to the first mortgage bondholders for their bonds, and for two years' unpaid interest, and for expenses, without recognizing the rights of the second mortgage bondholders. Coombs has transferred the railroad and property to The Iron Railway Company, which is composed of the parties who made up the first mortgage bondholders, and no new or innocent party holds the stock thereof; and the corporation and the holders of its stock had full notice from the beginning of the rights of the second mortgage bondholders. In August, 1884, notice of the claims of the second mortgage bondholders was published in certain newspapers in Boston, where both classes of securities are largely or entirely held. On the 5th of August, 1884, the committee of the second mortgage bondholders served upon each member of the committee of the first mortgage bondholders a notice asserting the rights of the second mortgage bondholders, and a like notice upon The Iron Railway Company, and also published a like notice in two Boston newspapers; all of which was done before The Iron Railway Company issued the stock. In the various statements which appear as a matter of public record, the Trust Company and The Toledo, Cincinnati and St. Louis Railroad Company have

alleged that the earnings of The Iron Railroad Company have been sufficient, if kept separate, to pay the interest on the first mortgage bonds, such statements being made in the papers filed in the various foreclosure proceedings to foreclose the various divisions of The Toledo, Cincinnati and St. Louis Railroad Company. The committee of the first mortgage bondholders have stated repeatedly in a public way that their road was earning sufficient to pay the interest on the first mortgage bonds, and such claim was made by them, and by all that class of bondholders, when The Toledo, Cincinnati and St. Louis Railroad Company first ceased to pay interest on the first mortgage bonds.

No demand was ever duly made by the holders of the first mortgage bonds for their interest, in accordance with the terms of their mortgage, nor by the Trust Company as trustee. A portion of the property alleged to have been purchased under the decree of foreclosure and sale is covered by the second mortgage and not by the first, although it is claimed by the purchasing committee and asserted to have been conveyed to The Iron Railway Company. The Iron Railway Company claims that, by virtue of its title from the committee of the first mortgage bondholders, it has acquired a right to the entire income, from whatever source, of The Iron Railroad Company and all its property and franchises, although the same may exceed the sum sufficient to pay the interest on such first mortgage bonds. There can be no valid decree of foreclosure and sale which will deprive the second mortgage bondholders from participating in the net profits and income, after paying the interest on the first mortgage bonds. By the terms of both mortgages, the property, if sold, was to be sold in the city of Ironton, Ohio, and the same place should have been adopted when sold under decree of the court. The net earnings of The Iron Railroad Company should have been applied, from the time of the appointment of the receiver, to pay the interest on the first mortgage bonds, and the balance should have been left for the subject of an account between the receiver and the second mortgage bondholders, in accordance with the terms of the mortgage.

The bill prays for an answer under oath, and also for a notice to the second mortgage bondholders to come in and aid in the prosecution of the suit; that the sale to the committee of the first mortgage bondholders be rescinded, or so far qualified as to be declared to be in trust for both classes of bondholders; that the sale to The Iron Railway Company be rescinded or be declared to be for the benefit of both classes of bondholders; that an account be taken of the amount of the earnings of The Iron Railroad Company, applicable to the payment of interest on its first and second mortgage bonds, received since the road was placed in the hands of a receiver, and also an account of the amount of earnings diverted by the consolidation, prior to the appointment of a receiver, and an account of the amount of property under the control of the court, which ought to be applied upon the bonds in lieu of such diverted earnings; for the application of the same, first, in payment of the interest overdue on the first mortgage bonds, and the balance, if any, after that, in payment of interest up to the specified rate on the second mortgage bonds; and for general relief.

The Iron Railway Company and Coombs put in separate demurrers to the bill. The demurrer of The Iron Railway Company alleges want of equity, and also multifariousness, in that the bill seeks both to have the foreclosure proceedings avoided and the sale set aside, and to obtain a participation in the benefits of the purchase of the property at the sale; and also alleges that it appears that the plaintiff has not been injured by the foreclosure proceedings, and that he might, with diligence, have prevented or remedied any injury by intervening in the proceedings; that for all such injury there was a plain, adequate and complete remedy at law, in a suit against the Trust Company; that it is admitted by the bill that default was made in paying the interest due to the holders of the first mortgage bonds, which continued up to the time of the sale of the road and still continues, but it contains no offer to pay the bonds or the interest due on them, or to redeem the property from the first mortgage; that it does not allege any privity with, or duty or liability to, the

second mortgage bondholders, on the part of the first mortgage bondholders, nor any common interest between them; that as to so much of the bill as rests upon any alleged agreement or undertaking on the part of the committee of the first mortgage bondholders, whose names are given in the bill, it appears that all of them are necessary parties and none of them are made parties; that all of them and the plaintiff are citizens of Massachusetts, and that this court has no jurisdiction to enforce the alleged agreement; that the agreement is not sufficient in form or certainty to permit its enforcement or to warrant any recovery of damages on account of any breach of it; that no consideration is alleged for it, nor is it alleged to be in such form as imports consideration; that the committee were not authorized to make any such agreement with the second mortgage bondholders; that such agreement and this suit admit the competency of the organization of The Iron Railway Company, and such agreement and the alleged authority therefor do not appear to be competent to create any privity with, or duty or liability to, the plaintiff, on the part of The Iron Railway Company and its stockholders; that it does not appear that Coombs was in privity with, or incurred any obligation or liability to, the plaintiff or any of the second mortgage bondholders, or was served with any notice, or had any knowledge, of any undertaking in behalf of any second mortgage bondholders, or of any violation thereof, and no fraud, or knowledge of or complicity in any fraud, on the part of Coombs, is sufficiently alleged in the bill; that it is alleged in the bill that no foreclosure proceedings such as are set forth can bar the second mortgage bondholders from the net profits and income, after the payment of the interest on the first mortgage bonds; and that for the recovery of any property formerly of The Iron Railroad Company which may not have been covered by the first mortgage but may have been covered by the second mortgage, it appears that the parties in interest have a plain, adequate and complete remedy at law.

The demurrer of Coombs is to the same effect as that of The Iron Railway Company.

On a hearing on the bill and demurrers, a decree was entered dismissing the bill, with costs. An application for a rehearing was made, on an allegation of surprise and accident, by reason whereof the case was not properly presented on the part of the plaintiff. On a hearing on the application, a decree was made which states that the plaintiff was heard in support of his application, as well upon all matters which he had to advance on the insufficiency of the prior hearing, as upon any alleged error in the judgment thereupon rendered, and the defendants were not only heard in support of the sufficiency of the hearing and the correctness of the judgment, but "also offered in open court, for the purpose of preventing any amendment hereafter to said bill by incorporating therein an offer to redeem said Iron Railroad either from the lien of the first mortgage, or from the purchaser, if and whenever in the future the circumstances and parties may have become changed, and said property may have increased in value, to waive all objection to said bill; if said complainant would amend the same forthwith by making such an offer to redeem, and accept a decree of this court limiting the time therefor, and, on default in making such redemption, to be forever barred and foreclosed of all right, title and interest in said property; and said complainant declined said offer. And thereupon, upon consideration thereof, and for other sufficient reasons, as well as said offer by said defendants, said motion for a rehearing is denied, and said judgment sustaining said demurrer and dismissing said bill, with costs, stands confirmed." The plaintiff has appealed from the decree dismissing the bill.

It is impossible to sustain this bill as against the demurrers. There is no allegation of any actual fraud. There is no offer to redeem. There is no averment of any consideration or mutuality in the alleged agreement between the two committees. There is no allegation that the property was sold for less than its actual value. The bill admits that the claim of first mortgage bondholders is superior to that of the second mortgage bondholders; and the failure of the plaintiff to offer to redeem is evidence that he does not think the property was worth more than it brought at the sale.

If the plaintiff or the second mortgage bondholders had exercised due diligence, they might have intervened in the foreclosure suit. No fraud being alleged, the proper remedy, if any legal injury was sustained by them, was to apply to the court in which the foreclosure took place to set aside the decree or the sale. The bill does not allege any fraud as having been committed by any party to the foreclosure suit, or that the decree was any part of a fraudulent arrangement. There is no allegation of any fraudulent practice whereby any second mortgage bondholders lost any right to bid at the sale ; nor can it be gathered from the bill that they ever had any idea of bidding or of contributing to the purchase.

As to the allegation in respect of the inconsistent positions of the Trust Company as a trustee under both of the mortgages, no collusion on the part of that company is averred; nor is it alleged that the company, so far as it did or could represent the second mortgage bondholders, was unfaithful to its trust. There having been an admitted default on the first mortgage, and the foreclosure proceedings having been properly instituted, there is an absence of any allegation in the bill that the second mortgage bondholders, if they had been parties to the suit otherwise than through the trustee, could have taken any steps which would have prevented the decree of foreclosure. The Trust Company was a trustee under the first mortgage, which was prior in right to the second. It discharged no more than its duty to the first mortgage bondholders; and it appears by the bill that the second mortgage bondholders had a meeting and appointed a committee eighteen days prior to the sale, and thus had full knowledge of the situation of affairs, and full opportunity to apply to intervene as parties to the suit. Moreover, the bill alleges that the foreclosure suit was a suit to foreclose both of the mortgages, and, of course, according to their respective priorities. The bondholders were represented by their trustee, as is established by numerous decisions.

As to the other allegations in the bill, which question the proceedings which took place in the foreclosure suit prior to the sale, they were matters proper for adjudication in that

suit, and they cannot, under the circumstances of the case, be questioned in this suit. We have considered all of them, and pass them without further observation.

As to the alleged agreement that the second mortgage bondholders should participate in the reorganization, the claim made in regard to it may be dismissed with a few words. If there was any such agreement which could be binding, it was an agreement with the members of the committee of the first mortgage bondholders as individuals, and they are not made parties to the suit, though their names are given. Nor does the plaintiff represent the committee of the second mortgage bondholders, with whom the agreement is alleged to have been made. Nor does The Iron Railway Company represent the committee of the first mortgage bondholders. Independently of this, the alleged agreement is too vague and indefinite to furnish a foundation for its enforcement. On the showing of the bill, the parties never entered into any contract, and the court would have to make one for them. There was no mutuality in the agreement alleged, and no adequate consideration for it is stated or can be imported. These same considerations show that the agreement cannot be adjudged to create a trust for the benefit of the second mortgage bondholders. If the plaintiff or the other second mortgage bondholders have any right of action in respect of any such agreement, it must be one at law.

We have considered the various questions raised by the bill and the demurrers, and are of opinion that they do not need any further remark.

*Decree affirmed.*