167 U.S. 1 (1897)
COMPTON
v.
JESUP.
No. 814.
Supreme Court of United States.
Argued December 4, 1896.
Decided May 10, 1897.
CERTIFICATE FROM THE COURT OF APPEALS FOR THE SIXTH CIRCUIT.
*25 Mr. Attorney General Harmon and Mr. John G. Milburn for appellant. Mr. John H. Doyle was on their brief.
Mr. Rush Taggart and Mr. Henry Crawford for appellees.
MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.
When by virtue of the decrees of foreclosure in the several Circuit Courts of Ohio, Indiana and Illinois, entered March 23, 1889, the entire line in the three States was, on May 15, 1889, sold as a unit to the purchasing committee, and when that committee organized a new company, called "The Wabash Railroad Company," to which, on August 1, 1889, was conveyed the entire line so purchased, it would seem that all questions and disputes pending between the several mortgage trustees were settled and arranged upon the terms fixed by that decree. At all events, no appeal appears to have been taken by any party except Compton.
What are Compton's rights under the saving clause of the decree for sale; whether he is entitled, in case of a sale or redemption, to have the principal and interest of the prior mortgages reduced by the net earnings received by the purchaser since the sale, and what effect is to be given to the decree of the Circuit Court of the United States for the District of Indiana, are the questions certified to us by the Circuit Court of Appeals. It is true that the form in which the first question is put in the certificate would seem to go on the assumption that Compton's only right is to redeem, and that the disputable matter is whether the redemption is to cover *26 as well the Indiana as the Ohio division. In the view, however, that we take of the subject, we prefer to read the certificate as propounding the question of the real meaning and effect of the decree of sale as affecting Compton's rights, and to thus enable the Circuit Court of Appeals to finally determine the controversy. It is, indeed, contended in the appellees' brief that this court is precluded, by the form of the question, from going back of the decree of the Circuit Court, requiring Compton to redeem, but the Circuit Court of Appeals has certified to us for our consideration, in connection with the questions propounded, the entire decree of the Circuit Court, a full statement of the history of the whole case, and copies of the opinions of the Circuit Judges, in which are fully discussed the various questions that arise under the appeal to the Circuit Court of Appeals; among others the very question whether Compton's right is or is not a right to have a resale. And this alleged right of Compton is considered at length, in every aspect, in the briefs of the respective counsel.
It may be well to have before us the very language of that portion of the decree which we are asked to construe:
"And the defendant James Compton, having in open court, on the final hearing herein, objected to the rendering or entry of any decree in this cause at this time, on the ground that the issue raised by the amendment to the complainant's amended and supplementary ancillary bill and to the cross-bill of the cross-complainants, Solon Humphreys and Daniel A. Lindley, trustees, and the answers of the defendant, James Compton, to be filed herein, have not been tried and determined, the court overrules such objection, and the defendant, James Compton, duly excepts to such ruling and the entry of this decree. But it is adjudged and decreed in the premises that the rendering and entry of this decree in advance of the trial and determination of such issues is upon and subject to the following conditions, to wit:
"If, upon the determination of such issues, it shall be adjudged by this court that the decree rendered by the Supreme Court of the State of Ohio, in the suit brought by said James Compton against the Wabash, St. Louis and Pacific Railway *27 Company and others, referred to in the pleading herein, and the lien thereby declared and adjudicated in his favor, continue in full force and effect, then the purchaser or purchasers, at any sale or sales hereunder of that portion of the property sold, covered and affected by said lien, or the successors in title of said purchaser or purchasers, shall pay to the said James Compton or his solicitors herein, within ten days after the entry of the decree herein in favor of said James Compton, the sum of three hundred and thirty-nine thousand nine hundred and twenty dollars and forty cents, with interest thereon at six per cent per annum from May 1, 1888, being the amount found due on the equipment bonds by him owned, by the Supreme Court of Ohio in his said suit, upon the surrender by him of the bonds and coupons owned by him, referred to in his petition in this suit; and in default of such payment this court shall resume possession of the property covered and affected by the said lien of the defendant James Compton, and enforce such decree as it may render herein in his favor by a resale of such property or otherwise as this court may direct.
"And it is further ordered and adjudged that, notwithstanding the entry of this decree, the said issues concerning the claim and interest of said Compton shall proceed to a final determination and decree in accordance with the rules and practice of this court, and any decree rendered thereupon shall bind the purchaser or purchasers at any sale or sales had hereunder, and all persons and corporations deriving any title or interest in said property affected by such lien, from or through them or any of them, and nothing in this decree contained shall be construed as an adjudication of any matter or thing as against the said James Compton, or to prejudice, annul or abridge any right, claim or interest, or lien which the said James Compton may have in, to or upon the premises hereby directed to be sold, or any part thereof, or in, to or upon any property whatsoever embraced in this decree; it being the intention to hereby preserve the rights of said Compton in the relation in which he now stands towards the mortgagees parties hereto."
*28 The masters reported the making of the sale in accordance with the decrees, which sale was confirmed May 18, 1889, and on June 18 an order requiring the masters to execute a deed and to deliver possession was made. On August 17, 1889, the court ordered "that the issues presented in this cause as to the lien and claim of James Compton, made by the various pleadings herein upon and concerning said claim and lien, and reserved in the former decree herein saving the rights of said Compton, be and the same are hereby referred to Bluford Wilson as special master," etc.
The special master reported that Compton's lien was a valid one, and that he was entitled by the saving clause of the decree to have the Ohio division resold if the purchaser did not pay off his bonds, principal and interest, in full. The Circuit Court sustained the master in holding Compton's lien valid, but decided that his only remedy was to redeem the four divisional mortgages, two in Ohio and two in Indiana. In refusing Compton a right to a resale of the Ohio property, and in restricting him to a redemption of the Ohio and Indiana divisions in favor of the divisional mortgages thereon, we think the Circuit Court erred.
The language of that court was as follows:
"There is nothing in the reservations of the decree of March 23, 1889, which requires the court to order a resale of the property covered by Compton's equitable lien. That lien was in fact discharged by the foreclosure of the four mortgages ahead of it, which foreclosure Compton had no right to interfere with or delay. The reservations in the decree of sale were not intended to and cannot affect the purchaser's title acquired under those mortgages. We cannot properly, therefore, direct a resale without disregarding the prior right of said mortgagees and of the purchasers who have succeeded thereto. If we had the discretion to do so, it should not be exercised in his favor, for it does not appear that any larger sum could be obtained on a resale; it is not shown that it sold for an inadequate price, and Compton offers no guaranty or security that a resale will bring a larger amount and realize a surplus to which he would be entitled. It is not proper for *29 the court to order resales as a matter of experiment, and thereby cast clouds upon the title of the purchasers or present owner. As stated by the Supreme Court in Robinson v. Iron Mountain Railway, 135 U.S. 522, his failure to offer to redeem is evidence that he does not think the property was worth more than it brought at the sale. Besides he was as free to bid at the sale already made as he would be upon a resale. Under such circumstances we give full effect to his equitable lien by allowing him to redeem the property upon the terms indicated."
We think that these observations show a plain oversight or disregard by the learned court of the terms and obvious meaning of the decree of March 23, 1889. When the terms of that decree were fixed, all parties to be affected thereby agreed to the same. The issues raised by the pleadings as to Compton's claim were still pending and undetermined. It was evidently the wish and the interest of all the other parties to have the sale effected at once, and, in order to avoid the further delay that would be occasioned by awaiting the determination of those issues, the provisions or reservations in Compton's favor were put in the decree.
Substantially those provisions were that the entry of the decree of sale should not foreclose Compton's claim, but that the issues concerning it should be inquired into and determined; "that if upon the determination of such issues it shall be adjudged by the court that the decree rendered by the Supreme Court of Ohio, in the suit brought by said James Compton, referred to in the pleadings herein, and the lien thereby declared and adjudicated in his favor, continues in full force and effect, then the purchaser or purchasers at any sale or sales had hereunder of that portion of the property sold, covered or affected by said lien, or the successors in the title of said purchaser or purchasers, shall pay to said James Compton or his solicitors herein, within ten days after the entry of the decree herein in favor of said James Compton, the sum of three hundred and thirty-nine thousand nine hundred and twenty dollars, with interest at six per cent per annum from May 1, 1888, ... and in default of such *30 payment this court should resume possession of the property covered and affected by the said lien of the defendant James Compton, and enforce such decree as it may render herein in his favor by a resale of such property or otherwise as this court may direct."
When the report of the special master finding the issues in Compton's favor, that his lien was a valid one, and that he was entitled to have the Ohio division resold if the purchaser did not pay off his bonds as provided in the decree, was sustained by the court so far as the validity of Compton's lien was concerned, we do not think it was open for the court, consistently with the terms of the decree of March 23, 1889, to deprive Compton of the rights and remedies therein conferred. The various questions and equities arising out of the dates of the mortgages, etc., which are discussed by the court, were all waived and removed from consideration, so far as Compton was concerned, by the express provisions of the decree. It is suggested that because it was said that the decree in Compton's favor should be enforced by a resale of the property or otherwise as the court might direct, that thereby it was intended that the court should have as full power to determine and regulate Compton's rights and remedies as if the reservations in the decree had never been made. This we think a strained and unnatural interpretation to put upon the phrase mentioned. We do not understand it as intended to enable the court to disregard its decree of March 23, but rather as a provision in Compton's favor  as, for instance  that the court might empower Compton to take possession of the property covered by his lien, instead of resorting to a sale.
When the Circuit Court speaks of a resale as inequitably affecting the rights of the prior mortgagees and of the purchasers who have succeeded thereto, it is evident that the court overlooked those provisions of the decree which, in express terms, subjected such purchasers to Compton's rights to a resale, if they do not choose to pay him the sum awarded by the decree. So, when the court says that Compton could as well have been a bidder at the sale as at a resale if one be ordered, it omits to notice that when the sale took place under *31 the decree Compton's claim was still undetermined, but that provision had been made for him in the event that his claim was held valid. He could not safely bid because he could not foresee whether his claim would be allowed, and the arrangement made relieved him, very properly, from the perplexity to which he would have been subjected if the sale had been unconditionally made, when the fate of his claim was still uncertain.
It was well said by Mr. Chief Justice Waite, speaking for this court in Fosdick v. Schall, 99 U.S. 252, that "railroad mortgages ... are peculiar in their character and affect peculiar interests. The amounts involved are generally large, and the rights of the parties oftentimes complicated and conflicting. It rarely happens that a foreclosure is carried through to the end without some concessions by some parties from their strict legal rights, in order to secure advantages that could not otherwise be attained, and which it is supposed will operate for the general good of all who are interested. This results almost as a matter of necessity from the peculiar circumstances which surround such litigation."
The decree of March 23, 1889, under which the sale was made and confirmed on May 18, 1889, was, in all essential respects, the final decree in the case, the questions reserved being merely incidental to carrying the decree into full effect. That portion of said decree which established Compton's rights was in its nature final; the only matter which was kept in reserve as respects Compton was the awaiting the determination of the validity and amount of his claim by the report of the special master. And it may well be doubted whether it was competent for the Circuit Court at a subsequent term to disturb the rights of Compton defined and adjudicated at a previous term in the final decree of sale. In several particulars the case of Central Trust Co. v. Grant Locomotive Works, 135 U.S. 207, would seem to be applicable. That was a case like the present one, of several suits brought to foreclose mortgages in two or more of the Circuit Courts of the United States having jurisdiction over distinct railroads which had been consolidated. Two such suits were brought in the Circuit Court for *32 the Southern District of Ohio, and a receiver was appointed. While the proceedings were pending the Grant Locomotive Works intervened by petition in both suits, and set up claims arising out of the use by the receiver of certain locomotive engines belonging to the intervenor. Upon a hearing and on the 22d day of December, 1883, of the October term, orders were entered in each of said causes in favor of the intervening petitioner, by which the receiver was ordered to pay certain considerable sums to the Grant Locomotive Company by way of rent and purchase money of the engines, and further declaring that the said several amounts with interest thereon should be a charge upon the earnings, income and all the property of the Toledo, Cincinnati and St. Louis Railroad Company (the consolidated company), and especially of the Ohio division, prior to the first mortgage or other bonded debt of said railroad or of said division thereof, and that any balance of said several amounts remaining unpaid at the date of the foreclosure and sale of said railroad or division should be a first lien thereon, and the said sale should be made subject thereto. On March 7, 1884, the same being one of the days of the February term, these orders were suspended by an order of the court, the petitioner objecting. On March 15, 1884, the Central Trust Company, complainant, filed an answer to the intervening petition, and also a petition for a rehearing and review of the orders of December 22, 1883, which it further asked should be annulled and set aside.
On April 10 of the April term, 1884, the court ordered and decreed that the said decrees of December 22, 1883, be set aside and annulled. In June, 1884, the two Ohio divisions of the railroad were sold, and the sales were confirmed by an order made July 9, 1884. The decrees for sale contained provision for the payment into the court by the purchasers at these sales of certain amounts of cash, and also provided that the decrees of confirmation of the sale should be subject to the terms and provisions of the decrees of sale theretofore made; and the court reserved the right to resell said railroad property upon failure by the purchasers to comply with such terms and provisions.
*33 On the 8th day of February, 1887, the Grant Locomotive Works and R.S. Grant severally filed petitions in said causes, setting forth the matters hereinbefore detailed, and alleging that the orders of April 10, 1884, purporting to annul the decrees of December 22, 1883, were void, and that those decrees were still in force. The Central Trust Company answered, and the purchasers of the Ohio divisions demurred; and on June 11, 1887, the court adjudged and decreed that the order of April 10, 1884, be set aside, and that the said orders of December 22, 1883, be restored. January 28, 1889, on motion of the intervening creditors that the purchasers of the railroad property be required to pay into the registry of the court, for the use of the intervenors, the amounts due under the decrees, and that in default thereof the said railroad property be resold for the benefit of the intervenors, decrees so prayed for were entered over the objections of the Central Trust Company and of the purchasers. The court also refused to entertain bills of review on the part of the Central Trust Company and of the purchasers, seeking to have said orders of December 22, 1883, reconsidered.
From these orders and decrees an appeal was taken on the part of the Central Trust Company and the purchasers to this court, where the action of the Circuit Court was approved, and it was held that if the decree of sale in a suit for foreclosing a railroad mortgage provides that the purchaser shall pay down a certain sum in cash when the sale is made and do certain other acts prescribed, the purchaser is bound by the decision of the court as to such other claims, and has no appealable interest therein; that a decree, in a suit for foreclosing a railroad mortgage, that the claim by an intervening creditor of an interest in certain locomotives in the possession of the receiver and in use on the road was just and entitled to priority over the debt secured by the mortgage, is a final decree upon a matter distinct from the general subject of the litigation, and it cannot be vacated by the court of its own motion after the expiration of the term at which it was granted.
In the opinion in this case, Swann v. Wright's Executor, *34 110 U.S. 590, was cited. There Swann had purchased a railroad under a decree which provided that the sale should be subject to the liens already established, or which might be established on references then pending, as prior and superior to the lien of the mortgage, and the claim of Wright was one of this class. It was pending before the master and reported on after the sale, when the purchaser applied to oppose its confirmation, and was not allowed to do so; and Swann afterwards filed a bill to set aside Wright's claim for fraud in its inception, which bill was dismissed, and the dismissal was on appeal affirmed on the ground that the property was purchased expressly subject to all established claim or claims which might be established on references then pending, which included Wright's, and it was decided that as neither the purchaser nor his grantee proposed to surrender the property to be resold for the benefit of those concerned, such purchaser had no standing in court for the purpose of relitigating the liens expressly subject to which he bought and took title.
The apprehensions expressed in their brief by the learned counsel of the appellees, that because of the absence of the other holders of the equipment bonds, the purchasers or their successor, the Wabash Railroad Company, may yet be subjected to their claims, are without foundation. It would seem that their claims were disposed of by the decree of this court in the case of Wabash, St. Louis & Pacific Railway v. Ham, 114 U.S. 587, where it was held that the property sold under the decree of foreclosure is not subject to any lien in favor of the holders of the equipment bonds. We think it quite plain that Compton is the only party having an interest in and a right to enforce the decree of the Ohio Supreme Court. The provision contained therein assessing the amount of his claim at the amount of the bonds held by him shows that the decree was intended to operate solely for his benefit, and the direction that the proceeds of sale should be brought into court, to abide its further order on the footing of the decree, is the order usually made when a sale is made by an officer appointed by the court. Such a sale might result in a sum in *35 excess of Compton's claim, and, in such event, there would be room for a further order of the court.
This view of the import of the decree of March 23, 1889, relieves us from a consideration of the difficult questions that would arise if Compton were compelled to proceed by way of redemption. Those questions are discussed with learning and ability in the respective opinions of the Circuit Judges, furnished us in connection with the certificate, and also in the elaborate briefs of the appellees' counsel. Compton v. Wabash Railroad, 31 U.S. App. 486.
But, as we have already said, all parties who have had the benefit of the decree of sale are precluded from going back of it, and from now raising questions that might otherwise have arisen. Not only were those who were parties to the proceedings in the Ohio court bound by the decree, therein reached, that Compton had a right to sell the Ohio line in satisfaction of his lien, but the Ohio divisional mortgagees who were not parties to that decree, but who procured, or, at least, have acquiesced in, the decree of March 23, 1889, and have participated in the benefits of the early sale thus secured, have no right now to object to the enforcement of Compton's lien in the manner pointed out in the decree. The Stephen Morgan, 94 U.S. 599; Mount Pleasant v. Beckwith, 100 U.S. 514.
No objections were taken by any of the parties to the decree of sale of March, 1889, either for want of parties or for any other reason. Indeed, it was plainly a conventional decree. Any inconvenience that would be occasioned by a resale of a portion of the entire line can be avoided by complying with the decree and making payment accordingly. If the Wabash Railroad Company be regarded simply as an outside purchaser, it cannot be heard to object to the terms of the decree of sale. If, what is apparently its real character, it be regarded as a company formed by an arrangement between the parties controlling the sale, it has even less right to disregard the rights of Compton as stipulated for in the decree.
The next question put is whether Compton is entitled to have the prior mortgages on the Ohio division reduced by the *36 net earnings received by the purchasers since the receivers turned over possession of the road to them.
If the Wabash Railroad Company, as the successor of the purchaser at the sale, is to be regarded as the Ohio mortgagees in possession, it is liable to account for the rents and profits or net earnings of the mortgaged property. Such, certainly, is the general rule when property is redeemed, either by the mortgagor or by a junior incumbrancer having a right to redeem, and we see no reason why that rule should not be applied in a case like the present. Jones on Mortgages, 5th ed. vol. 2, § 114.
But we think the better view is that the Wabash Company should be regarded as a party in possession under the express terms of the order of sale, and as representing all parties in interest, including Compton; and hence cannot claim to be an absolute purchaser of the rights of a mortgagor not subject to account for rents and profits. In that point of view there is a trust relation, which involves an accounting until Compton is disposed of.
Whether the decree of the Circuit Court of the United States for the District of Indiana between the same parties and unappealed from, and which, while recognizing Compton's lien, declares his remedy to be a redemption of the railroad in Indiana and Ohio, estops Compton from enforcing his lien or claim against the Ohio division only, is the third question put to us.
This question should be answered in the negative, and, indeed, is covered by the view which we take of the real nature of Compton's remedy, as entitling him to a sale of the Ohio division if his debt should not be paid by the purchaser under the decree of sale. Compton's claim, in its present status, consists of the decree of the Ohio state court in his individual favor, fixing the amount of his debt, and decreeing a sale of the Ohio property, and of the decree of sale of the Circuit Court of the United States affirming the decree of the Ohio court as to the validity and amount of the claim, and providing that if it should not be paid by the purchaser, Compton should have a right to a sale of the Ohio road or to some equivalent remedy.
*37 Upon the theory of the mortgagees themselves, the suits in the Circuit Courts of Ohio and Indiana were two distinct proceedings, having in view the sale of two distinct portions of the road, and while the decree of the Circuit Court of the Indiana district may restrict Compton from proceeding in that court and district, so as to affect property in Indiana, except on the terms of that decree, such decree cannot, as we view it, be used by the purchaser to affect or defeat Compton's rights in the Circuit Court of the United States for the Ohio district. This contention overlooks the distinction between Compton as one of a class of bondholders and Compton recognized in the decree as the owner of a final judgment or decree of the state court of Ohio.
Upon the whole, we answer the questions propounded thus:
1st. That the decree of sale of March 23, 1889, confers upon Compton, in event that his claim shall not be paid by the purchaser, the right to a decree of resale of the property situated in Ohio and covered and affected by his lien.
2d. That, in event of such sale, and in applying the proceeds thereof, Compton will be entitled to an account of the net earnings of the Ohio division over and above all operating expenses, taxes paid and cash paid, if any, in redemption of receiver's certificates and other expenses properly chargeable against the Ohio division, which net earnings should be deducted from the amount due on the two prior mortgages on said division.
3d. That the decree rendered in the Circuit Court of the United States for Indiana is not res judicata upon the foregoing questions.
Let it be so certified.