### CENTRAL POWER CO. v. CITY OF KEARNEY.

(Circuit Court of Appeals, Eighth Circuit. July 13, 1921.)

No. 5827.

1. **Electricity ⊂⇒11—Nebraska city cannot make contract fixing rates, so as to abridge power to increase or reduce.**

Assuming that under Rev. St. Neb. 1913, § 4954, a city is authorized to contract with an electric light and power company concerning the rates to be charged, it cannot make a contract precluding it from increasing or reducing the rates during the life of the contract, in view of section 4955, authorizing cities to regulate such rates and providing that such power shall not be abridged by ordinance, resolution, or contract.

2. **Contracts ⊂⇒10(2)—Electricity ⊂⇒11—Contract fixing rates unenforceable against company for want of mutuality when beyond city's powers.**

As a contract between a Nebraska city and an electric light and power company, providing for the construction of an electric light and power system and fixing maximum rates to be charged for 25 years, was beyond the city's powers so far as it prohibited changes of rates during the life of the contract, its provisions were unenforceable against the company for want of mutuality, and did not prevent an increase of rates.

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit by the City of Kearney against the Central Power Company. From an order dismissing defendant's counterclaim, and denying a motion to dissolve a temporary restraining order, defendant appeals. Reversed, with directions.

Thomas F. Hamer, of Kearney, Neb., and George A. Lee, of Omaha, Neb. (Warren Pratt, of Kearney, Neb., on the brief), for appellant.

Tibbets, Morey & Fuller, of Hastings, Neb. (Raymond M. Tibbets, of Hastings, Neb., of counsel), amici curiæ.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Hector M. Sinclair, of Kearney, Neb. (Edward P. McDermott, of Kearney, Neb., on the brief), for appellee.

Before SANBORN, Circuit Judge, and TRIEBER and NEB-LETT, District Judges.

TRIEBER, District Judge. This is an appeal pursuant to section 129, Judicial Code (Comp. St. § 1121), from a refusal of the court below to dissolve a temporary restraining order, restraining appellant from putting in effect a schedule of rates to be charged and collected by appellant for furnishing electric lighting and power for the city of Kearney, Neb., and the inhabitants thereof, in excess of the maximum rates fixed by a contract of the city with appellant, made on July 9, 1917, and the refusal of the court to grant appellant, on a counterclaim, a temporary injunction restraining appellee from preventing appellant to put in force the schedule increasing the maximum rates set out in the ordinance of the city granting appellant the franchise by the ordinance of July 9, 1917, and accepted by it. The action was originally instituted by appellee in the district court of Buffalo county, state of Nebraska; that court granting a temporary restraining order on an ex parte hearing. On petition of appellant the cause was removed to the District Court of the United States for the District of Nebraska, where an answer and counterclaim were filed by appellant, and motions for a dissolution of the temporary restraining order granted by the state court, and for a temporary injunction against appellee, which motions were by the court denied.

The complaint alleged that an election was held in and by said city on June 19, 1917, empowering the city to grant to appellant for the term of 25 years, the right and privilege of maintaining, constructing, and operating an electric lighting and power system in the city, and to enter into a contract in writing concerning the use of the streets and alleys in said city and of the maximum price or rates to be charged and collected for the furnishing of electric lighting and power for said city and the inhabitants thereof; that pursuant to this authority the city by its mayor and council entered into a contract with appellant on July 9, 1917, by the passage of Ordinance No. 161 on the part of the city, and on the part of appellant by filing in the office of the clerk of said city a written acceptance of the terms and conditions of said ordinance.

The maximum rates provided in the ordinance are set out in the complaint. It is then charged that, although said contract is still in full force and effect, appellant, in violation thereof, has undertaken to make new and higher rates for the same service, and threatens and intends to put them into force and effect, and charge and collect thereunder for lighting and power furnished; that it refuses to be bound by and furnish lighting and power under and in accordance with the contract rates as provided in the contract. The new schedule of rates proposed to be put into effect is set forth and shows a considerably higher rate of charges than provided in the ordinance. It further charges that appellant's plant is the only electric lighting and

power system in said city, and is in general use by its inhabitants, and they are solely dependent upon said system. Then follows the usual prayer for an injunction.

The answer, so far as the allegations therein are material for the determination of the case on this appeal, denies that under the laws of the state of Nebraska, appellee was authorized to enter into any contract for the period of 25 years under fixed and permanent rates.

The counterclaim, omitting the allegations immaterial at this hearing, charges that the fair and reasonable present value of its property devoted to the public service in the generation and distribution of light and power in the city is the sum of $510,880; that at the time said franchise was granted the laws of the state of Nebraska only permitted appellee and other cities of the same size to grant a conditional and limited right and privilege, and not the right, to contract with appellant or any other public service corporation for a stated number of years as to rates to be charged; that the laws of the state limited the authority of cities of that size, and expressly provided that, while such cities had the right to regulate electric rates, such municipalities had no right to abridge this power of regulation; and that for this reason appellee had no power to make any rate contract with appellant.

It is charged that the prices and rates, tentatively fixed by the ordinance and franchise, have never produced an income adequate or sufficient to meet the legitimate operating expenses, depreciation, and taxes of appellant in the operation of its plant in the city of Kearney, and to yield a fair and reasonable return, or any return upon the fair and reasonable value of its property, but that in fact they were at the time, ever since have been, and now are unfair, unreasonable, noncompensatory, and confiscatory; that under the abnormal, unusual, and unprecedented conditions created by the World War the cost of all materials, labor, and supplies entering into the production of electric current, power, and energy furnished by appellant have so greatly increased as to make the schedule of rates in the ordinance set out a losing and confiscatory schedule, and, unless permitted to charge and collect fair and reasonable rates for the service it is furnishing, its property will be confiscated; that appellant has from time to time sought from appellee city an increase of rates, which has been refused, and, unless permitted to increase its rates, it will become bankrupt; that to meet the necessary demands made on it by the city and its inhabitants for an extension of its lines and system that is now and will be necessary will require an additional investment and expenditure of $250,000, but that, owing to the noncompensatory rates now in force, it is impossible to raise this money from the sale of its securities or otherwise.

It is also alleged that the maintenance and operation of the plant have been economical and efficient, but that it is necessary to expend more large sums of money for repairs and additions to maintain that efficiency, by making necessary replacements and betterments, and unless the rates and charges for the current furnished are increased it will be impossible to make these repairs and additions, and

will result in foreclosure of the mortgage on the property and prevent the necessary efficiency in its public functions, and great loss to its stockholders and bondholders; that the legal rate of interest in the state is 7 per cent., and the usual rate of return upon investments in Kearney and adjoining communities is 8 to 10 per cent. per annum. It then sets out the net income for each year since 1917, which, after deducting 7 per cent. for reasonable depreciation, is only 1.7 per cent. per annum, and in some years less than that; that any lesser rates than those sought to be charged in the proposed schedule would be confiscatory as these proposed rates will return only 8 per cent. on the present value of its property used in the operation of its plant in the city of Kearney. It is then alleged that, unless the relief prayed is granted, and it should refuse to charge the existing inadequate and confiscatory rates, that actions against it would be brought for penalties, fines, and civil recoveries, thereby involving it in a multiplicity of actions and litigations.

The statutes of the state of Nebraska applicable are:

Section 4954, Rev. St. 1913: "The mayor and city council shall have power to make contracts with and authorize any person, company or association to erect a gas works. power plant, electric or other light works, heating plant or water works in said city and give such persons, company or association the privilege of furnishing water, lights, power or heat for the streets, lanes, alleys and public places and property of said city and its inhabitants for any length of time not exceeding twenty-five years: Provided, no such contract shall be made or entered into by the mayor and council until the question of granting the contract or privilege shall have been submitted to the electors of the city at a special election called for that purpose or at a general city election, notice of which shall be given by publication in some newspaper published in the city at least thirty days before the date of such election and a majority of the electors voting upon the proposition shall have voted in favor of making the contract or granting such privilege."

Section 4955, Rev. St. 1913: "The mayor and council shall have power to require every individual or private corporation, operating such works or plants subject to reasonable rules and regulations, to furnish any person applying therefor, along the line of its pipes, mains, wires or other conduits, with gas, water, power, light or heat, and to supply said city with water for fire protection, and with gas, water, power, light or heat, for other necessary public or private purposes; to regulate and fix the rental rate for water, power, gas, light or heat; to regulate and fix the rents or rates of water, power, gas, electric light or heat; and to regulate and fix the charges for water meters, power meters, gas meters, electric light or heat meters, or other device or means necessary for determining the consumption of water, power, gas, electric light or heat, and these powers shall not be abridged by ordinance, resolution or contract."

Counsel for appellant earnestly argued that this action should be ruled by the late decision of the Supreme Court of the United States in Southern Iowa Electric Co. v. City of Chariton, 255 U. S. ——, 41 Sup. Ct. 400, 65 L. Ed. ——, filed April 11, 1921, and the decisions of the Supreme Court of Iowa, which hold that the laws of Iowa do not authorize municipalities of that state to contract for rates with public utilities corporations. They contend that—

"Although section 4954, Nebraska Rev. St. 1913, empowers the mayor and city council 'to make contracts with and authorize any person, * * * to erect * * * electric light works, * * *' while the Iowa statutes, section 720 of the Iowa Code, does not use the word 'contract' at all, but only

empowers cities to 'grant to individuals or private corporations the authority to erect and maintain such works or plants,' the statutes in both states are in effect identical."

On the other hand, it is claimed by counsel for appellee, that the Iowa rulings are inapplicable to the instant case, owing to this difference in the language of the Nebraska and Iowa statutes.

[1] We do not deem it necessary to determine that question, for, assuming that under the laws of Nebraska cities are authorized to makes contracts for rates to be charged by such corporations, the question is: What is the effect of the provision of section 4955, Rev. Statutes of Nebraska, on such a contract? That section expressly reserves to the city authorities—

"to regulate and fix the rental rate for water, power, gas, light or heat; to regulate and fix the rents or rates of water, power, gas, electric light or heat; and to regulate and fix the charges for water meters, power meters, gas meters, electric light or heat meters * * * and these powers shall not be abridged by ordinance, resolution or contract."

This provision in express terms prohibits cities of that state to make a contract with such a public utility corporation, which precludes them thereafter, and during the life of the contract, to change the rates, either by increasing or reducing them, when in the judgment of the mayor or council of the city the interests of the public require it; decreases subject, of course, to the constitutional prohibitions of depriving the corporation of its property, by making the rates noncompensatory or confiscatory.

[2] If only one of the parties to a contract is vested with such a power, can it be said that a contract made under such a statute doesn't lack mutuality? The law is too well settled to require the citation of numerous authorities that a contract, the provisions of which are unilateral is unenforceable for want of mutuality. Robinson v. Iron Railway Co., 135 U. S. 522, 532, 10 Sup. Ct. 907, 34 L. Ed. 276; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 57 L. R. A. 696; A. Santaella & Co. v. Otto F. Lange & Co., 155 Fed. 719, 84 C. C. A. 145; Taber Lumber Co. v. O'Neal, 160 Fed. 596, 87 C. C. A. 498.

In view of the fact that a municipality of the state of Nebraska cannot, under the laws of that state, enter into a contract with an owner of private property used for the public service not to change rates within a time specified, Ordinance No. 161 is not a valid contract, and no more binding on the public service corporation than on the city. No municipality may, in the absence of power granted by the state of its creation, enter into such contracts, and clearly not when the laws of the state expressly prohibit it, as section 4955, Rev. St. Nebraska 1913, does. Under similar laws of the state of Texas it was contended in behalf of a city that—

"Even if no such contract was permissible under the laws of the state, which would bind the city not to lower the rates, nevertheless there was a unilateral contract or concession resulting from the granting of the franchise which bound the railway company to the franchise rate."

**274 F.—17**

But in City of San Antonio v. San Antonio Public Service Co. (opinion filed April 11, 1921) 255 U. S. ——, 41 Sup. Ct. 428, 65 L. Ed. ——, the Supreme Court held the contention untenable, saying:

"But besides, the error underlying the proposition is not far to seek. The duty of an owner of private property used for the public service to charge only a reasonable rate, and thus respect the authority of government to regulate in the public interest, and of government to regulate by fixing such a reasonable rate as will safeguard the rights of private ownership, are interdependent and reciprocal. Where, however, the right to contract exists, and the parties, the public on the one hand and the private on the other, do so contract, the law of the contract governs both the duty of the private owner and the governmental power to regulate. Where, therefore, as in the case supposed in the argument, the regulating power of government being wholly uncontrolled by contract, it would follow that that power would be required to be exerted and hence the supposed condition operating upon the private owner would be nugatory. Such a case really presents no question of a condition, since it resolves itself into a mere issue of the exercise by government of its regulatory power."

That decision rules this cause. The court below erred in sustaining the motion of appellee to dismiss appellant's counterclaim and in denying appellant's motion to dissolve the temporary restraining order granted by the state court.

The cause is reversed, with directions to proceed in conformity with this opinion.

---

⊙⊷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes