370        NEBRASKA REPORTS.        [Vol. 109

City of University Place v. Lincoln Gas & Electric Light Co.

---

CITY OF UNIVERSITY PLACE, APPELLEE, v. LINCOLN GAS & ELECTRIC LIGHT COMPANY, APPELLANT.

FILED DECEMBER 8, 1922.    No. 22129.

1. **Municipal Corporations:** POWERS: GAS CONTRACT: RATES. By section 1708, Comp. St. 1909, set forth in the opinion, a city of the second class not having power to regulate rates had power to *contract* for the furnishing of gas to the city and its inhabitants and fix therein a maximum charge for such service. *Wabaska Electric Co. v. City of Wymore*, 60 Neb. 199, distinguished.

2. **Constitutional Law:** GAS CONTRACT: IMPAIRMENT. An ordinance reciting "that, in consideration of the rights and privileges granted herein, the grantees shall have a right to charge not in excess of $1.50 per 1,000 cubic feet of gas," etc., which is accepted by the company, constitutes a contract the obligation of which may not be impaired by either party.

3. **Quaere.** Whether or not the state, by the exercise of its paramount authority to regulate rates which may be charged by public utility corporations, may intervene upon a showing that the rate fixed by the contract is unreasonable or confiscatory, not decided.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Reavis & Beghtol* and *C. A. Frueauff*, for appellant.

*J. A. Brown*, contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and DAY, JJ., REDICK, District Judge.

REDICK, District Judge.

This action is brought by the city of University Place,

a municipal corporation, against Lincoln Gas & Electric Light Company, a corporation engaged in the manufacturing and distribution of gas to the inhabitants of the plaintiff, seeking to perpetually restrain the defendant from charging more than $1.50 per 1,000 cubic feet, less a discount of 25 cents for gas so furnished.

By section 1708, Comp. St. 1909, the city of University Place, as a city of the second class, was authorized "to grant a franchise to and *make a contract with* any person, company, or association for the privilege of granting to such person, company or association the furnishing of light for the streets, lanes, alleys and other public places and property of said city and the inhabitants thereof, and to levy a tax for the purpose of paying the costs of such lighting the streets, lanes, alleys and other public places and property of said city; and the furnishing of power to the residents, citizens and corporations doing business in such city."

At the time of the adoption of the ordinance hereinafter referred to, no power had been granted by the legislature to cities of the second class to regulate the rates which a public utility corporation might lawfully charge for furnishing gas to the inhabitants of the city; such power was not granted until 1911. Rev. St. 1913, sec. 5019.

In the summer of 1909 one Springer and one Phillips made a proposition to the city that, in consideration of a franchise therefor, they would construct and maintain a gas plant to furnish gas to said city and its inhabitants during the term of the franchise, for a price not in excess of $1.50 per 1,000 cubic feet, and on the 28th of August, 1909, the city accepted the proposition and passed an ordinance conferring upon the company a twenty-year franchise in the streets and alleys of the city and fixing the price as contained in said proposition. Springer and Phillips assigned all their right in and to the franchise to the defendant company, which ac-

372 NEBRASKA REPORTS. [VOL. 109

City of University Place v. Lincoln Gas & Electric Light Co.

cepted the same upon the terms provided in said ordinance.

In December, 1920, the company notified the consumers of gas in University Place that on and after January, 1921, the rates for gas would be $1.75 per 1,000 cubic feet, with a fixed meter charge of 25 cents a month. The district court granted the injunction, and the gas company appeals.

The question for determination in this case is the proper construction of section 1708, Comp. St. 1909, above set out, the claim of the gas company being that such section gave the city no power to regulate the rates the company might charge for its service, and that a contract entered into between the city and the company whereby it was attempted to fix the maximum rate to be charged for the service was an attempt at regulation and beyond the competency of the city to contract. On the other hand, it is contended by the city that the statute in question gave it the right to fix and determine the terms and conditions upon which it would grant the franchise, and that the provision of the ordinance fixing the rate constituted a valid contract as distinguished from a regulation of the rates, and that to now permit the company to charge the higher rate would impair the obligation of such contract.

The question is important, as it appears that, while the amount fixed by the ordinance as the price to be charged for the service, at the time thereof and for a considerable time thereafter, was a fair and reasonable one, and one which would enable the company to make a profit, it is now claimed, and not disputed, that, owing to the increase of the cost of materials and labor since the war, the price fixed is confiscatory, and if the company is not permitted to charge the rate proposed by them they will be required to furnish the service at a loss. The consideration of this fact would have an important bearing if the proceeding were one before the

city council or a state board for the purpose of fixing the rates to be charged for the service, but, manifestly, the fact that the enforcement of a contract will result, by reason of changed conditions, in loss to one of the parties is no ground for refusing judgment. *Knoxville Gas Co. v. City of Knoxville*, 261 Fed. 283; *City of Moorhead v. Union Light, Heat & Power Co.*, 255 Fed. 920. The question, therefore, is whether there is a contract the obligation of which would be impaired by the proposed action of the gas company.

At the start it would be well to distinguish the two powers, to contract and to regulate, as related to the question at issue. The power to contract is one which exists in every person, natural or artificial, and involves a meeting of the minds of the respective parties resulting in the agreement; it requires the participation of more than one. On the other hand, the power to regulate, as applied to the precise question presented, is a power existing in one party to dictate and command the action of another without his consent thereto. The power to contract may be said to be an attribute of the person or individual, while the power to regulate is an attribute of sovereignty; and, as will appear later on in this opinion, while the Constitution of the United States jealously guards and protects the right of contract and inviolability of the obligation of contracts, it is equally insistent that the powers of government shall be exercised only by the properly constituted authorities of government, or those to whom such powers may have been lawfully delegated. It is, however, true that the right of a municipal corporation to contract is a restricted one and is to be found by an examination of its charter, and exists only when conferred in express words or is necessarily to be implied therefrom; and in determining what implications are proper from an express grant of power, the subject of the grant and nature of the power are important considerations, and if the power has reference to the proper conduct of the particular municipal con-

cern as distinguished from general powers ordinarily exercised by the state, we think a more liberal rule of construction should be adopted. Now, a city exercises its business or proprietary power in contracting for the construction of gas works; while the power of a city to regulate or fix the rates which a gas company may collect from private consumers partakes of the nature of a governmental power and also of the nature of a business power. *Omaha Water Co. v. City of Omaha,* 147 Fed. 1. In that case Judge Sanborn said: "The making of a contract for the construction and operation of waterworks wherein the parties agree what rates may be collected by the owner of the works from private consumers during a reasonable term of years is the exercise of one of the business powers of the corporation. The purpose of such a contract is not to regulate rates, for there are no rates to regulate. It is to procure water and to get rates for the city and for its inhabitants."

Contracts involving franchises for use of the public streets for supplying water, gas and electricity to the inhabitants of a city for a limited time are common in the history of municipalities and have been quite generally sustained. The subjects of such contracts are of intimate municipal concern affecting the health, comfort and general welfare of the inhabitants. So far as the supplying of such facilities is concerned, the city is exercising its proprietary or business powers rather than its governmental prerogatives, and the rules and principles of law applicable to contracts and transactions between individuals apply thereto. *Reed v. City of Anoka,* 85 Minn. 294.

We are of the opinion that in determining whether the fixing of a maximum rate in the ordinance in question was within the competency of the parties, particularly the city, we are not required to follow the strict rules of interpretation or construction which apply to a delegation of strictly governmental powers—the power conferred is to *contract,* not to *govern;* and although the contract has

the effect to suspend for a time the governmental power to regulate rates, when it exists, this does not affect its validity, if the time limit be reasonable, and the power to enter into the contract is found. *Home T. & T. Co. v. City of Los Angeles,* 211 U. S. 265, 273. True, in that case it was held that the existence of the power to make a contract which *pro tanto* extinguishes a governmental power must clearly and unmistakably appear, and that all doubts must be resolved in favor of the *continuance* of the power; but in that case the city itself had been delegated the power of regulation and that fact entered into the decision. Further reference to this case will be made later.

With these principles in view, let us read the statute in question. Its language is somewhat involved and requires some reconstruction to give it the meaning intended, but without doubt power is given "to grant a franchise to and make a contract with" any person or company for the furnishing of light to the city and its inhabitants. To "grant a franchise"is a governmental act, involving power to fix terms which the other party may accept or reject. To "make a contract" involves negotiation and agreement of the parties. Why did the legislature insert the words, "make a contract with," unless it was intended to grant a power to render more effectual the power to grant a franchise? In the opinion in *Detroit v. Detroit Citizens Street R. Co.,* 184 U. S. 368, Justice Peckham remarked (p. 384) : "The rate of fare is among the most material and important of the terms and conditions which might be imposed by the city in exchange for its consent to the laying of railroad tracks and the running of cars thereon through its streets." True, the learned justice did not rest his decision upon the statute authorizing the city to name the terms and conditions, as the statute provided that rates of fare should be established by agreement, but he clearly expressed the opinion that the power existed without reference to the provision as to agreement. In *Flynn v.*

*Little Falls Electric & Water Co.*, 74 Minn. 180, it was held that a contract by a city to pay an agreed price for water hydrants for a reasonable time was authorized by a statute authorizing it "to grant to third parties the right to erect water-works * * * in accordance with such terms and conditions as might be agreed upon."

In *Reed v. City of Anoka, supra,* it was argued that, "though the general right and power to contract does not necessarily involve the exercise of legislative functions, the power to fix rates and charges to be paid by the municipality in consideration of the performance of contracts does," but it was pointed out that the purpose was "not to govern the inhabitants, but to secure for them and for itself a private benefit." And in *Walla Walla City v. Walla Walla Water Co.*, 172 U. S. 1, 17, it was said: "But where a contract for a supply of water is innocuous in itself and is carried out with due regard to the good order of the city and the health of its inhabitants, the aid of the police power cannot be invoked to abrogate or impair it."

In *Vicksburg v. Vicksburg Water-works Co.*, 206 U. S. 496, it was held that municipal corporations may be authorized to exclude themselves from the right of regulation of such matters as water-rights, and, following the state decisions, may, "under a broad grant of legislative authority conferred without restrictions or conditions, make a contract with a corporation, fixing a maximum rate at which water should be supplied to the inhabitants of the city for a limited period, which, in the absence of fraud or convention, will be beyond legislative or municipal power to alter to the prejudice of the other contracting party under the impairment of obligation clause of the federal Constitution." The legislative authority in that case was "to provide for the erection and maintenance of a system of water-works to supply said city with water, and to that end to contract with a party or parties, who shall build and operate water-works." While the decision was based to a very large extent upon the

decisions of the supreme court of the state cited therein, the logic of the opinions in those cases commends itself to us.

In *City of Cleveland v. Cleveland City R. Co.*, 194 U. S. 517, the city was empowered to contract with street railway companies in respect to the terms and conditions upon which such roads might be constructed, operated, extended and consolidated, and it was held that a contract fixing the rate of fare at five cents was within the powers granted, and that an ordinance attempting to change the contract as to rates was void as an impairment of its obligation, although under a previous ordinance the right to diminish fares had been reserved.

Our attention has not been called to any case where the power to contract for a supply of water, gas, or other similar necessity, has been granted, the authority to fix a maximum rate has been denied, except *Freeport Water Co. v. Freeport City*, 180 U. S. 587; but in that case there were two statutes under construction, one in which the city was authorized to contract "for a supply of water for public use" and the other, passed the following day, by which it was empowered to "authorize any person or private corporation to construct and maintain the same (water-works) at such rates as may be fixed by ordinance, and for a period not exceeding 30 years;" and it was held the statutes were *in pari materia*—should be construed together; and that as the words "fixed by ordinance" might be construed as fixed for the whole period, or from time to time, the latter construction should prevail as it was more favorable to the public. Four justices dissented, but in view of the difference in the facts the case cannot be considered as militating against the construction we have given to the term "make a contract" in the statute under review. The opinions, however, are most instructive. A similar conclusion was reached in *Central Power Co. v. City of Kearney*, 274 Fed. 253, holding the power to contract was subject to the power to regulate conferred by the same statute. See,

378        NEBRASKA REPORTS.        [Vol. 109

City of University Place v. Lincoln Gas & Electric Light Co.

also, *Knoxville Water Co. v. Knoxville,* 189 U. S. 434. It will be remembered that no power of *regulation* was vested in the City of University Place at the time of the execution of the contract under discussion.

In *Omaha Water Co. v. City of Omaha,* 147 Fed. 1, the city was granted power to contract with third parties for the construction and operation of water-works "on such terms and under such regulations as may be agreed on," and it was held that rates came within "terms and regulations," citing the *City of Cleveland* case, *supra.* Does the addition of the words above quoted add anything to the general grant of a power to contract without restrictions? We think not. "A municipal corporation possesses, as incidental to its express powers and the object of its existence, implied authority to do those things essential to efficiently accomplish the latter." *Schneider v. City of Menasha,* 118 Wis. 298. The power to contract carries with it, as a necessary incident, the power to insert such terms and conditions as are appropriate and necessary, and are germane to the subject. What more important consideration, both to the citizens and the company, than the price that was to be charged for gas? Let it also be borne in mind that we have no question here about the power of the legislature to regulate rates; the question arises between the company and a city which did not possess that power; and what it did not possess it could not relinquish; therefore, the lack of mutuality referred to in *Central Power Co. v. City of Kearney,* 274 Fed. 253, is not present; and the contract may be valid between the parties, regardless of the question whether the state may, by the exercise of its paramount authority, interfere with its complete fulfilment (*City of Manitowoc v. Manitowoc & Northern Traction Co.,* 145 Wis. 13), which we do not decide.

The appellant cites a number of cases to sustain the proposition that the provision of the ordinance fixing the price to be charged for gas is void because of lack of authority in the city to regulate rates. The first case

cited is *Wabaska Electric Co. v. City of Wymore,* 60 Neb. 199, which was an action by the company to enjoin the city from establishing by ordinance rates to be charged for furnishing electricity to the city and its inhabitants. The franchise ordinance under which the company was operating provided for a certain number of street lights at $8 a month, and it was alleged the city proposed to discontinue the use of said lights. This was the only provision in the franchise relating to rates, and this court denied the injunction as to the street lights upon the ground that the plaintiff had an adequate remedy at law; and, as to the proposed regulation of the rates to be charged private consumers, on the ground that the proper parties were not before the court, viz., the mayor and city council. The court, however, held that the proposed ordinance fixing the rates was beyond the power of the city authorities and rested in the state, as at that time the legislature had not delegated the power to cities of the second class to regulate rates. It was stated by the court that it was not necessary to determine whether the city was authorized by its charter to grant an exclusive franchise for the erection and operation of an electric light plant. It will be noted that the ordinance granting the franchise did not assume to fix any rates except the charge which might be made against the city for street lights. What the holding of the court would be in an action by the company to recover such charges or for refusal to use the number of lights called for is left to conjecture. It seems probable that this particular contract might be sustained under the general powers of the city to contract for supplies, the same as a contract for the purchase of stationery, for example, without the necessity of considering the question we are discussing. The case, therefore, is authority only upon the general proposition that a municipal corporation has no authority to exercise the governmental function of regulating rates to be charged by a public utility corporation unless expressly author-

380          NEBRASKA REPORTS.          [Vol. 109

City of University Place v. Lincoln Gas & Electric Light Co.

ized by the legislature, and the question there decided differs essentially from the one under discussion, which does not involve the regulation of rates under a franchise already in operation, but involves the question of the power of the city to *agree upon* the charge to be made for the service for a reasonable period as a consideration for the granting of the franchise. If the city of Wymore had fixed a maximum rate in the ordinance granting the franchise and the company had accepted it, thereby making a contract, it would have been necessary for the court to construe the city charter granting the right "to make contracts with   *   *   *   any person or company   *   *   *   to erect gas or electric light works." Comp. St. 1901, sec. 1399. Counsel quote this statute and the one under consideration with the comment, "There is very little difference in the wording," which is true; but there is a wide difference between what was attempted to be done under the respective statutes—in the one case to make a contract, in the other to regulate rates; and while the different acts relate to the same subject, their divergent character calls for some discrimination in determining the existence of power to do those acts.

The next case cited is *City of Winchester v. Winchester Water Works Co.*, 251 U. S. 192. It appears that the company had a contract with the city which expired in 1916 (the terms of which contract are not disclosed), and thereafter the ordinance in controversy was passed, seeking to fix rates at which water should be furnished the inhabitants. The statute of Kentucky provided: "The board of council may grant the right of way over the public streets or public grounds of the city to any railroad company or street railroad company, on such conditions as to them may seem proper, and shall have a supervising control over the use of same, and shall regulate the speed of cars and signals and fare on street cars; and under like condition and supervision may grant

the right of way that may be necessary to * * * water companies." It was held that this statute gave the right to fix street car fares, but not to regulate water rates. In this case, as in the Nebraska case above cited, there was no question of contract, the same having expired at the time of the passage of the ordinance. In *Lewisville Natural Gas Co. v. State,* 135 Ind. 49, it was held that, under "power to provide by ordinance reasonable regulations for the safe supply, distribution and consumption of natural gas within the respective limits of such towns and cities," the power to regulate rates had not been delegated, but only to make regulations appropriate to the use of natural gas as related to the safety of the inhabitants. *Tacoma Gas & Electric Light Co. v. City of Tacoma,* 14 Wash. 288, was another case where the city was given power "to regulate and control the use and price of the water so supplied," but with reference to gas, the one in question, the only power granted was "to regulate and control the use thereof," and it was held that no power to regulate the price of gas was delegated.

*Farmer v. Columbiana County Telephone Co.,* 72 Ohio St. 526, is cited. The statute of Ohio under construction in that case provided: "When any lands authorized to be appropriated to the use of a company are subject to the easement of a street, alley, public way, or other public use, within the limits of any city or village, the mode of use shall be such as shall be agreed upon between the municipal authorities of the city or village and the company; * * * but nothing in this · section shall be so construed as to authorize any municipal corporation to demand or receive any compensation for the use of a street, alley, or public way, beyond what may be necessary to restore the pavement to its former state of usefulness." The ordinance granting the right to the telephone company to occupy the streets of the city contained a number of provisions as to rates, which, as in the case under review, were inserted at the suggestion

and with the consent of those seeking a franchise; but the court held that under the statute in question the city had power only "to agree with such companies as to the mode of use, and upon compensation for such use, but not beyond what may be necessary to restore the streets to former state of usefulness," and that, therefore, the provisions with regard to the rates were not authorized.

*Home T. & T. Co. v. City of Los Angeles,* 211 U. S. 265, was a case where the power to regulate telephone rates had already been delegated to the city before the passage of the ordinance granting to the telephone company a franchise to erect or lay telephone wires upon the streets for a term of 50 years, and containing provisions that the charges for service shall not exceed specified amount. The action was to enjoin the enforcement of an ordinance fixing the rates to be charged by the company at a figure lower than those prescribed by the ordinance granting the franchise, the claim being that such latter ordinance was a contract, and that to permit the city to subsequently change the rates would impair its obligation. The court held that a power to fix and determine rates did "not authorize the municipality to abandon the power, and to irrevocably establish rates for the entire period of a franchise." The term, "fix and determine rates," was construed as a grant of strictly governmental power—it authorizes command, but not agreement—and that no power to contract with reference thereto could be implied from such language, and that the intention to abandon the power "must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power." It was held, however, that, where the power to contract is established, rates might be fixed "for a definite term, not grossly unreasonable in point of time." It further appeared in that case that the franchise was to be granted upon the conditions prescribed in the act, "and not otherwise," and the subject of rates was not mentioned.

Appellant also cites *Knoxville Gas Co. v. City of Knoxville,* 261 Fed. 283, upon the proposition, as stated in the brief, that "if the city had no power to regulate gas rates it had no power to contract with reference to them, and the contract alleged in plaintiff's petition is void." The gas company was formed under a Tennessee statute containing a provision that the streets and alleys should not be "entered upon or used  *  *  *  for laying pipes or conductors * * * until the consent of the municipal authorities shall have been first obtained, and an ordinance shall have been passed prescribing the terms on which the same may be done." The city charter contained only general authority to make appropriations "for lighting the streets" and to "grant right of way through the streets." It was held that the provision of an ordinance consenting to the use of the streets by the gas company, attempting to fix a maximum price to be charged for gas, was void, as the provisions of the statute and the charter conferred no power upon the city to fix the rates by contract or regulation. The most that can be claimed for this case, favorable to appellant, is the classification as governmental of the power to contract with that to regulate; as stated by Warrington, circuit judge: "The power to establish prices to be charged by public service corporations, whether it is to be exercised by regulation or by *contract,* resides primarily in the state," and "the settled federal rule in respect of both these features is exacting, and need not be misunderstood; it requires that the intent of the state so to give up a portion of its power must appear in explicit and convincing terms—in plain words—and that doubtful expressions shall be resolved in favor of the state." It is manifest that no such power can be inferred or implied from the language used in the statute or charter, under the most liberal rules of construction; but, as was said by Moody, J., in *Home T. & T. Co. v. City of Los Angeles, supra*: "It is obvious that no case, unless it is identical in its facts, can serve as a controlling pre-

cedent for another, for differences, slight in themselves, may, through their relation with other facts, turn the balance one way or the other." In the Knoxville case there was no such word as contract, and the court said "the claim of power in the city to agree upon a price * * * must at last rest on the right created in the city in general language to impose terms and conditions of its consent to use the highways, rather than upon language specifically authorizing it either to regulate prices or to agree upon a price," which proposition it seems is opposed by Omaha Water Co. v. City of Omaha, and City of Cleveland v. Cleveland City R. Co., supra. Neither of these cases is conclusive of the questions presented in the case under review, and we conclude that the contract in question is valid, in view of which holding it is unnecessary to discuss the question of estoppel presented by the city.

AFFIRMED.